IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                        Case No.:  8:15-CR-369-T-35TGW

MARLON EDGARDO DAMAS PUERTO,

       Defendant.
_____/

**DEFENDANT DAMAS PUERTO'S SENTENCING MEMORANDUM**

      Defendant Marlon Edgardo Damas Puerto, by and through his undersigned counsel, respectfully submits that a sentence below the advisory guidelines range computed in the Presentence Report (PSR) would be sufficient but not greater than necessary to serve the ends of sentencing set forth at 18 U.S.C. § 3553(a).  In support of this recommendation, Mr. Damas Puerto submits the following memorandum.[1]

### I.   Background

      Marlon Edgardo Damas Puerto was born in Quinito, Honduras in October of 1989.  For years, the people of Honduras have suffered from human rights abuses, extreme poverty, and the world's highest murder rate.[2]  Against this backdrop, Mr. Damas Puerto was raised by his mother and other family members in "extremely poor and sad" conditions.  (PSR, ¶ 39).  His father left the family when Mr. Damas Puerto was young and has never had a role in his life.  (*Id*.).  Despite

---

[1] The government filed a Motion To Recognize Defendant's Substantial Assistance Pursuant to Rule 5K1.1 on February 23, 2016. (Doc. 49).  If the Court grants this motion, then the Court would have the discretion to impose a sentence below the mandatory minimum of 10 years.  *See* 18 U.S.C. § 3553(e).

[2] *See* "Amnesty International Report 2014/15: The State of the World's Human Rights" at 174, found at: https://www.amnesty.org/en/documents/pol10/0001/2015/en/

these difficult circumstances, Mr. Damas Puerto was able to attend and graduate from the Instituto Tecnologico de las Americas (ITLA) in Bella Vista, Honduras, with a degree in automobile mechanics. (*Id*., ¶ 60). He was employed for the past five years as a mariner which required him to be at sea for about 15 days per month and paid approximately $600 per month. (*Id*., ¶ 62). Mr. Damas Puerto has two young children for whom he was providing financial support. (*Id*., ¶ 48-49).

In or around August of 2015, Mr. Damas Puerto made an extremely poor decision to join a cocaine smuggling venture that had been planned to leave from Panama. (Id., ¶ 10-13). Joining this venture led to the charges filed in this case. Mr. Damas Puerto pled guilty to Count One of the Indictment and fully accepts responsibility for his role in the offense. With respect to the offense conduct, neither Mr. Damas Puerto nor his co-defendant Denrry Leeshao Galeano Hyde attempted to flee nor did they attempt to rid their vessel of the contraband that was stored in a compartment on the boat. In fact, co-defendant Galeano Hyde identified himself as the captain of the vessel and made a verbal claim of Panamanian nationality for the vessel. (*Id*., ¶ 13-14). Both Mr. Damas Puerto and his co-defendant admitted that they were paid for their role in the conspiracy.

## II.     Objections to the Presentence Report (PSR)

Mr. Damas Puerto's primary objection to the advisory Guidelines range computed in the PSR is that Probation should have applied a two level reduction to the offense level to reflect the defendant's minor role in the offense pursuant to USSG § 3B1.2(b). This objection impacts paragraphs 25, 27, 31, and 69. Mr. Damas Puerto also objects to paragraph 84 to the extent that it suggests there are no factors found at 18 U.S.C. §3553(a)(1)-(7) for the Court to consider in fashioning a sentence below the advisory guideline system. Mr. Damas Puerto details arguments

in support of a below Guidelines sentence in a subsequent section of this memorandum. With regard to the applicability of the role in the offense reduction, the November 2015 amendments to the Sentencing Guidelines provide added support for the reduction in this case.

### a. The Sentencing Commission amended § 3B1.2 because courts were not applying the reduction as often as the Commission intended.

Mr. Damas Puerto objects to paragraph 25 insofar as it does not recommend a two level downward adjustment to reflect his mitigating role in the offense pursuant to USSG §3B1.2(b). The two level reduction is appropriate here because Mr. Damas Puerto was a minor participant in the criminal conspiracy covered by Count One of the Indictment. Notably, the U.S. Sentencing Commission amended the Application Notes to §3B1.2, effective November 1, 2015, finding that the "mitigating role is applied inconsistently and more sparingly than the Commission intended." The added language to §3B1.2 makes it clear that the adjustment can and should apply in a case like this where a defendant is substantially less culpable than the average participant even if he performed "an essential or indispensable role" in the crime. §3B1.2, App. Note 3(C).

Furthermore, Application Note 3(A) was modified to ensure that sentencing courts can still apply the adjustment to "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored." In light of the recent amendment, the mere fact that similarly-situated defendants in past maritime drug smuggling cases might not have received the downward adjustment should not prevent its application in this case.

### b. Mr. Damas Puerto's conduct fits squarely within the confines of §3B1.2(b), as amended.

The amended Application Note 3(C) includes a "non-exhaustive" list of factors for the court to consider:

> i) *the degree to which the defendant understood the scope and structure of the criminal activity;*
>
> (ii) *the degree to which the defendant participated in planning or organizing the criminal activity;*
>
> (iii) *the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;*
>
> (iv) *the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*
>
> (v) *the degree to which the defendant stood to benefit from the criminal activity.*
>
> *For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

§3B1.2, App. Note 3(C). In this case, Mr. Damas Puerto did not plan or organize the conspiracy and did not exercise any significant decision-making authority or discretion. His role was confined to that of a crew member, not the captain, and he did not have a "proprietary interest in the criminal activity" but rather was "simply being paid to perform certain tasks."

Therefore, his role in the offense is precisely the type of role the Commission had in mind when it amended §3B1.2 to encourage courts to apply the adjustment more frequently. Mr. Damas Puerto is not attempting to convince the Court that his role in the offense was trivial or inconsequential. Rather, he submits that in the parlance of §3B1.2(b) he was less culpable than the average participant and therefore eligible for the two level reduction in offense level. His role in the offense was necessary in that every vessel needs a crew, however, he exercised no control or discretion over the planning or execution of the conspiracy and did not stand to profit from the conspiracy beyond being paid an agreed-upon amount.

   c. **The Eleventh Circuit's *en banc* opinion in *De Varon* does not foreclose application of §3B1.2(b) in this case.**

*De Varon* merely stands for the proposition that the district court needs to weigh the case-specific facts to determine whether a given defendant should receive a mitigating role adjustment. The *en banc* Eleventh Circuit was careful to reject any bright-line rule for applying the role adjustment in drug courier cases: "[w]e do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal." *United States v. Rodriguez De Varon*, 175 F.3d 930, 944-45 (11th Cir. 1999) (*en banc*). Along similar lines, the Court of Appeals in *De Varon* did not lay down an edict that cases involving a substantial amount of drugs transported are precluded from the application of a mitigating role reduction. *Id.* (finding that drug amount is a "relevant factor" and "may be dispositive" in some cases). All *De Varon* instructs this Court to do is to conduct a "uniquely fact-intensive inquiry" in light of two guiding principles: 1) to consider the defendant's role in the relevant conduct he has been held accountable for under the Guidelines; and 2) to consider his role as compared to that of other participants in the relevant conduct. *Id.* at 944-45.

Unlike the defendant in *De Varon* who was convicted of the crime of importing heroin, Mr. Damas Puerto was convicted of the crime of conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine. Thus, where De Varon committed the "simple crime consisting of nothing more than the act of bringing drugs into this country," Damas Puerto committed the continuing offense of conspiracy which by law involves at least one other culpable participant. *Id.* at 947-48 (Carnes, J. concurring). Therefore, the defendant submits that, in relying on *De Varon*, Probation places undue weight on the outcome of that case as opposed to its underlying principles. Mr. Damas Puerto is not asking the Court to compare his conduct to "some broader criminal scheme in which he was a minor participant," as suggested in

the Addendum to the PSR, but to compare his conduct to the average participant in the conspiracy of which he was convicted. (PSR at p. 14). Simply put, the defendant was a minor participant in the scheme charged in Count One.

When compared to the average participant in the conspiracy charged in this case, Mr. Damas Puerto's role was clearly inferior. In conducting the "average participant" analysis, the Court can include both charged and uncharged conspirators. *De Varon*, 175 F.3d at 944-45. As for Count One, the Indictment clearly contemplates that the conspiracy included more participants than simply Mr. Damas Puerto and the captain Galeano Hyde for it alleges that the two defendants "…did knowingly and willfully combine, conspire, and agree with each and <u>with other persons unknown to the Grand Jury</u>, to possess with intent to distribute and to distribute five (5) kilograms or more of [cocaine] …" (Doc. 1) (emphasis added). These unnamed "other persons" were involved, along with the co-defendant and boat captain Galeano Hyde, in planning the details of the conspiracy and they provided directions and instructions to Mr. Damas Puerto.

Reading the principles announced in *De Varon* in conjunction with the amended Application Notes to §3B1.2, the Court can properly conclude that Mr. Damas Puerto qualifies for the two level reduction for minor role. That finding of fact can only be reversed on appeal if it is found to be clearly erroneous. *De Varon*, 175 F.3d at 937-38. Prior to the recent amendment, district courts may have been reluctant to apply the reduction to cases where the amount of drugs at issue made a particular defendant's role "important or essential." *Id*. at 942-43. That hesitation is no longer necessary: "t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative…if he or she is substantially less culpable than the average participant in the criminal activity." §3B1.2, App. Note 3(C).

### d. Applying §3B1.2(b) would result in a total offense level of 26.

The impact of granting the defendant's objection would be to reduce his total offense level from 31 to 26. Applying the two level downward adjustment in §3B1.2(b) would actually reduce the adjusted offense level by a total of five levels due to the operation of §2D1.1(a)(5)(ii) which adds an additional three-level reduction to the reduction in §3B1.2. With an offense level of 26 and criminal category I, the advisory Guidelines range should be 63-78 months of imprisonment.

### III.     Sentencing Factors under Title 18, United States Code, Section 3553(a)

Consideration of the factors addressed in Section 3553(a) supports a sentence well below the advisory guideline range recommended in the PSR. As the Court is aware, the Guidelines are no longer mandatory and may not be presumed reasonable. *United States v. Nelson*, 555 U.S. 350 (2009). Indeed, there are ". . . many instances where the Guideline range will not yield a reasonable sentence. . ." *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006).

Prior to imposing sentence, the Court must compute the advisory Guidelines range and consider all of the sentencing factors set forth in Title 18, United States Code, Section 3553(a). These include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §

3553(a). Mr. Damas Puerto contends that each sentencing factor weighs in favor of a sentence below the advisory Guideline range as recommended in the PSR, but for the purposes of this memorandum focuses on the following.

The offense of conviction in this case is a serious offense carrying serious consequences for those who violate the law. That said, a review of the nature and characteristics of the defendant and the circumstances that led him to commit the offense reveals a man who does not need to be imprisoned for ten or more years. Mr. Damas Puerto has no prior criminal record and he played a minor role in the drug smuggling conspiracy charged in Count One. He certainly did not plan or organize the venture nor did he stand to share in a portion of the fruits of a successful operation. There was no violence used or even contemplated during the course of the crime. Mr. Damas Puerto was simply paid to serve as a crew member—not a captain—on a vessel containing someone else's drugs loaded by others into a compartment on the boat.

The Court is fully able to promote respect for the law, protect the public, and afford adequate deterrence by imposing a sentence less than ten years in this case. Even if the Court accepts the defendant's arguments that a below guideline sentence is appropriate in this case— and assuming the defendant would be eligible for a sentence below the mandatory minimum of ten years—Mr. Damas Puerto still faces several years of imprisonment. The premise that even minor actors in the maritime drug smuggling industry will receive several years of imprisonment in a foreign country serves these ends of sentencing when viewed in relation to the other factors.

Weighing the advisory Guidelines and the sentencing factors set forth in Section 3553(a), the defendant submits that a downward variance from the Guideline range should be granted. Indeed, in recent years district courts have imposed non-Guideline range sentences in the majority of powder cocaine trafficking cases. For fiscal year 2013, only 44.7% of powder

cocaine trafficking defendants received a within range sentence.[3] The average sentence for powder cocaine trafficking defendants was 79 months for fiscal year 2013, which is nearly thirty months below the low end of the Guidelines computed in the PSR for Mr. Damas Puerto.[4] Although many below Guideline sentences are based on government motions for downward departures based on substantial assistance, the fiscal year 2013 data reveal that 18.5% of below range sentences for powder cocaine traffickers were not sponsored by the government.

## IV.　Conclusion

　　Mr. Damas Puerto is a first-time offender who played a minor albeit necessary role in the offense of conviction. For all the reasons stated in this memorandum, the defendant urges the Court to grant his PSR objections and request for a variance, to the extent the Court is legally able to, and sentence him below the advisory Guideline range recommended in the PSR.

Respectfully submitted,

**s/Matthew J. Mueller**
Matthew J. Mueller, FBN: 047366
WIAND GUERRA KING, P.A.
5505 West Gray Street
Tampa, Florida 33609
Tel: 813-347-5100
Fax: 813-347-5198
Email: mmueller@wiandlaw.com
*Attorney for Defendant*
*Marlon Edgardo Damas Puerto*

---

[3] Found at: http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Powder_Cocaine.pdf

[4] The Guidelines range in the PSR was computed to be 108 to 135 months before taking into account the operation of the statutory mandatory minimum of 120 months. (PSR, ¶ 69).

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on February 23, 2016, I electronically filed the foregoing with the Clerk of the Court and the parties of record by using the CM/ECF system.

                 **s/Matthew Mueller**
                 *Attorney for Defendant*
                 *Marlon Edgardo Damas Puerto*